IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: WILLIAM C. SKIBBE

      Debtor.

WILLIAM C. SKIBBE,

      Appellants,

v.                CIVIL ACTION NO. 2:08-mc-00074

ACCREDITED HOME LENDERS, INC., et al.,

      Appellees.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Accredited Home Lenders, Inc.'s Motion to Withdraw Reference [Docket 1]. For the reasons discussed below, the Motion is **GRANTED**.

**I. Factual and Procedural Background**

The facts and allegations giving rise to this case are as follows. The plaintiff, William C. Skibbe, resided in a 900-square foot home in May 2005, that had a market value of $51,200. (Compl. ¶ 7.) On or around that time, the plaintiff responded to a solicitation from Defendants Aames Funding Corporation d/b/a Aames Home Loan and Dana Capital Group, Inc. and allowed them to conduct an appraisal of his home. (*Id.* ¶ 8-9.) An appraisal was completed by their appraiser who valued the home at $90,000, an amount in excess of its actual value. (*Id.* ¶ 9.) After the appraisal, the plaintiff entered into an exploding adjustable rate mortgage for $71,825. (*Id.* ¶ 10-11.) The plaintiff's original monthly payments were $519.54, but that amount escalated after two

years. (*Id.* ¶ 11.) The defendants did not ensure that the plaintiff had the capacity to make the loan payments based on the maximum possible rate under the loan terms and the plaintiff ultimately failed to make the payments. (*Id.* ¶ 12-13.)

The plaintiff filed a Chapter 7 petition in the Bankruptcy Court for the Southern District of West Virginia on July 16, 2007. The defendants foreclosed on the plaintiff's mortgage after the Bankruptcy Court granted Defendant Residential Credit Solutions ("RCS") relief from the automatic stay on November 29, 2007.[1] (*Id.* ¶ 15.)

On February 27, 2008, the plaintiff filed a civil suit in the Circuit Court of Putnam County, West Virginia, against the current defendants: Aames Funding Corporation d/b/a Aames Home Loan, RCS, Dana Capital Group, Inc., and Deutsche Bank National Trust. The plaintiff is seeking monetary and equitable relief, claiming that the defendants had entered into an unconscionable contract with the plaintiff, the plaintiff's loan was a result of fraudulent origination, and the defendants had engaged in illegal mortgage solicitation. (Compl. 4-7.)

On April 4, 2008, Defendants RCS and Deutsche Bank National Trust Company, in its capacity as indenture trustee for the Note-holders of Aames Mortgage Investment Trust (collectively "RCS/Deutsche"), filed a Notice of Removal, removing the civil action from the Circuit Court of Putnam County to the Bankruptcy Court as an adversary proceeding. (Notice of Removal, *William Carter Skibbe v. Resident Credit Solutions, et al.*, 2:08-ap-02024 (Bankr. S.D. W.Va. Apr. 4, 2008) [Docket 1].) RCS/Deutsche asserted that the Bankruptcy Court had subject matter jurisdiction

---

[1] The Bankruptcy Court's Order permitted RCS to begin foreclosure proceedings on November 12, 2007, and allowed the debtor plaintiff to remain in the home until January 16, 2008. (Agreed Order Granting Relief From Automatic Stay, *In re William Carter Skibbe*, 2:07-bk-20693 (Bankr. S.D. W.Va. Nov. 29, 2007) [Docket 32].) The home therefore was no longer part of the bankruptcy estate.

pursuant to 28 U.S.C. § 1452 because the claims in the civil action arose under and were related to the bankruptcy proceeding.[2] (*Id.* ¶ 5.) They also claimed that 28 U.S.C. § 1334 creates non-exclusive jurisdiction over the civil proceeding because it both arose in and was related to the bankruptcy proceeding, and therefore constituted a "core proceeding" as defined by 28 U.S.C. § 157. (*Id.* ¶ 6-9.) More specifically, RCS/Deutsche contended that the action arose in the bankruptcy proceeding because the civil action concerned the defendants' rights to enforce the loan and because the plaintiff could possibly recover funds related to the loan, which would affect the administration of the bankruptcy estate. (*Id.* ¶ 7.) They also asserted that the action was related to the bankruptcy proceeding because the debtor/plaintiff is seeking to recover monies, and if he were to be successful, the recovery of those sums would belong to the estate's trustee to be disbursed accordingly. (*Id.* ¶ 9.)

Approximately two months later, Defendant Accredited Home Lenders, Inc. ("Accredited"), which is the successor to Aames Funding Corporation, filed the pending Motion to Withdraw Reference [Docket 1]. Accredited seeks to transfer the proceeding to this court pursuant to 28 U.S.C. § 157(d) because the plaintiff's claims raised in the adversary proceeding are of a non-core nature (that is, they do not affect the plaintiff's bankruptcy case and could have been brought against the defendants regardless of the bankruptcy). The plaintiff responded only to the extent that he corrected Accredited's implication that the plaintiff had filed the instant action in the Bankruptcy Court, noting that he originally had filed in Circuit Court and the case later was removed to the

---

[2] The bankruptcy removal statute, 28 U.S.C. § 1452, permits any one party to remove and does not require the unanimous consent of the defendants. *See Cal. Pub. Employees' Retirement Sys. v. WorldCom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004).

-3-

Bankruptcy Court as an adversary proceeding [Docket 3].[3] The plaintiff did not file a responsive memorandum to Accredited's Motion to Withdraw Reference. RCS/Deutsche also did not respond.

## II. Discussion

Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), which held that Congress unconstitutionally had assigned adjudicative authority of Article III courts to bankruptcy judges. *Northern Pipeline* held that bankruptcy courts, as non-Article III courts, did not have the authority to hear claims based upon state-created private rights that were independent of and antecedent to the bankruptcy proceedings and involved parties who were not otherwise involved in the bankruptcy action. *In re Apex Exp. Corp.*, 190 F.3d 624, 631 (4th Cir. 1999) (citing *Northern Pipeline Construction Co.*, 458 U.S. at 84). The Act gives district courts original jurisdiction over all cases arising under title 11 of the Bankruptcy Code, 28 U.S.C. § 1334(b) (2000), but permits district courts to automatically refer bankruptcy cases to non-Article III bankruptcy judges. *Id.* § 157(a). In certain situations, however, withdrawal of the reference is necessary. *Id.* § 157(d). The Act provides as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

---

[3] In his response, the plaintiff stated that Accredited removed the case to the Bankruptcy Court. (Pl.'s Response 1.) In fact, Defendants RCS/Deutsche removed the proceeding.

*Id.* The first sentence of the statute allows for permissive withdrawal; the second sentence requires mandatory withdrawal.

Accredited argues that the non-core nature of the plaintiff's state law claims provides "good cause" for this court to withdraw the reference. In determining whether to exercise my discretion and withdraw the case for cause, I must consider the following factors: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) promoting judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial. *In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D. Va. 2003). The most important factor is whether the case presents a core or non-core proceeding, *In re Coe-Truman Techs., Inc.*, 214 B.R. 183, 187 (N.D. Ill. 1997), a distinction enacted by Congress after *Northern Pipeline* "to try and remedy the defects in the bankruptcy system." *In re Apex Exp. Corp.*, 190 F.3d at 631.

For a matter to be considered a "core" proceeding, it must "arise under" title 11 or "arise in" a case in title 11. 28 U.S.C. § 157(b)(1). Section 157(b)(2) contains a non-exhaustive list of the types of core proceedings, which includes but is not limited to "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . . ." *Id.* § 157(b)(2). As an initial matter, I note that "[s]imply because the proceeding presents questions of state law does not necessarily mean that the proceeding is 'non-core' or otherwise beyond the jurisdiction of the bankruptcy courts." *In re Poplar Run Five Ltd. P'ship*, 192 B.R. 848, 856-57 (Bankr. E.D. Va. 1995). The dispositive issue instead is the centrality of the proceedings to the bankruptcy case. *In re Sys. Eng'g & Energy Mgmt. Assoc., Inc.*, 252 B.R. 635, 642 (Bankr. E.D. Va. 2000).

A civil proceeding *arises under* title 11 when the cause of action or right is one that is created by the Bankruptcy Code. *See In re Aheong*, 276 B.R. 233, 242-46 (B.A.P. 9th Cir. 2002). "To determine whether a proceeding 'arises under' title 11, [a court applies] the same test used for deciding whether a civil action presents a federal question under 28 U.S.C. § 1331." *In re Poplar Run Five Ltd. P'ship*, 192 B.R. at 855. Accordingly, a proceeding arises under title 11 (and therefore is a core proceeding) if "a well-pleaded complaint establishes either that federal [bankruptcy] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [bankruptcy] law." *Id.* (quotation omitted). A civil proceeding *arises in* title 11 if it "is not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 835 (4th Cir. 2007). Additionally, in determining whether a proceeding is core or non-core, courts have considered whether: (1) the claims are specifically identified as core proceedings under 28 U.S.C. § 157(b)(2); (2) the claims existed prior to the filing of the bankruptcy case; (3) the claims are based entirely on state law or otherwise existed independently from title 11; and (4) the parties' rights or obligations are significantly affected by the outcome of the bankruptcy proceedings. *See Caperton v. A.T. Massey Coal Co.*, 270 B.R. 654, 657 (Bankr. S.D. W.Va. 2001); *In re Sys. Eng'g & Energy Mgmt. Assoc., Inc.*, 252 B.R. at 642.

It is clear from the face of the plaintiff's Complaint that the civil proceeding does not allege any cause of action or question under the Bankruptcy Code and thus did not arise under the bankruptcy proceeding. The Complaint presents purely state law claims, namely, claims of unconscionable contract, fraudulent loan origination, and illegal mortgage solicitation. Moreover, it is also clear that each of the plaintiff's claims could have been filed if the debtors never filed for

bankruptcy and thus did not arise in the bankruptcy. The claims arose in 2005 when the loan agreement was executed, all of the claims are based on state law, and the outcome of the bankruptcy proceeding will not affect the rights of the parties to this civil matter. *See In re Apex Exp. Corp.*, 190 F.3d at 632 (rejecting rationale that an action qualified as a core proceeding because the outcome may affect the bankruptcy estate by increasing its size with a potential money judgment and holding that pre-petition contract claims are not a core proceeding); *see also In re Porter-Hayden Co.*, 304 B.R. 725, 730-31 (Bankr. D. Md. 2004); *Cibro Petroleum Prods. Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108, 120 (S.D.N.Y. 2001) ("[A] breach of contract action by a debtor against a party to a pre-petition contract, who has not filed a claim with the bankruptcy court, is non-core." (Internal quotation omitted)). The Fourth Circuit has held that treating a contract dispute as a core proceeding would create an exception to *Northern Pipeline* that would swallow the rule because any contract action, like that at issue in *Northern Pipeline*, could result in a monetary benefit to the estate and thus concern the administration of the bankruptcy estate. *See In re Apex. Exp. Corp.*, 190 F.3d at 632. That reasoning applies equally to a suit for monetary damages like the civil proceeding at issue.

I **FIND** that the Complaint, therefore, presents a non-core proceeding, which weighs heavily in favor of withdrawal. Because it is a non-core proceeding, the bankruptcy court's decision would be subject to *de novo* review in this court pursuant to 28 U.S.C. § 157(c)(1). Consequently, withdrawing the reference would promote judicial economy and more efficiently use the parties' resources. *See In re Coe-Truman Techs., Inc.*, 214 B.R. at 187 (finding that once the court decides the case is a non-core proceeding, the other factors fall into place in favor of withdrawal). Withdrawing the reference certainly will not affect the uniform administration of bankruptcy law

because the Complaint raises issues governed by non-title 11 law. None of the other factors weigh against withdrawing the reference. Because the factors weigh heavily in favor of withdrawal for cause, I exercise my authority under § 157(d) to withdraw the reference of this case. Defendant Accredited Home Lenders, Inc.'s Motion to Withdraw Reference therefore is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    December 5, 2008

Joseph R. Goodwin, Chief Judge